UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
RAMON MILANES, individually and on behalf of all others      Case No. 23-cv-11311
similarly situated,


                              Plaintiff,                          **COLLECTIVE AND CLASS**
                                                                  **ACTION COMPLAINT**
                      v.

GENERAL HOLDING LLC, BRANDON YASGUR,
JOSEPH YASGUR, JOSEPH GERSHENOV,
WOODSTOCK MANAGEMENT CORP., 4030 BRONX
BLVD. ASSOCIATES, L.L.C., YASGUR REALTY CORP.
a/k/a YRC MANAGEMENT, UNIVERSAL
MANAGEMENT AGENCY LLC, ANN-GUR REALTY
CORPORATION, REALTY GROUP, AND ALL RELATED
ENTITIES,

                              Defendants.
------------------------------------------------------------------------X

        Plaintiff Ramon Milanes ("Plaintiff"), individually and on behalf of all others

similarly situated, upon personal knowledge as to himself and upon information and belief as

to other matters, by his attorneys, Rapaport Law Firm, PLLC, and Miller Law, PLLC, alleges

as follows:

                              **INTRODUCTION**

        1.      This class and collective action is brought pursuant to the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. §§ 207(a)(1), 260, and 216(b), New York Labor Law

("NYLL") § 652(1), 12 New York Codes, Rules and Regulations ("NYCRR"), Parts 141 and

142 and NYLL Article 6 § 190 *et seq.*, to recover unpaid minimum and overtime wages,

reimbursement for unlawful deductions from wages, liquidated damages for wage shortfalls

and for wages that were not paid on time, and other wages owed to Plaintiff and similarly

situated superintendents who have worked at the approximately seventy (70) apartment

buildings owned, controlled and/or operated by Defendants in New York City (the "Yasgur-Gershenov Buildings") during the applicable limitations periods.

2.      Defendants are a family-owned, residential real estate enterprise (the "Yasgur-Gershenov Enterprise") that, upon information and belief, was originally established in or about 1931.

3.      Upon information and belief, for nearly a century, generations of the Yasgur and Gershenov extended families were closely involved in, and financially benefitted from, the Yasgur-Gershenov Enterprise.

4.      Upon information and belief, members of the Yasgur and Gershenov extended families have operated, for years, under the cryptic name "The Realty Group," that, upon information and belief, constitutes and/or describes a joint venture, partnership and/or trade name.  Although "The Realty Group" is referred to in various lawsuits and documents relating to various Yasgur-Gershenov Buildings, the precise nature of its legal structure and/or form is unclear.

5.      Upon information and belief, Yasgur and Gershenov family members are beneficiaries of dozens of trusts that, in turn, are the managing members of limited liability companies ("Title-Holding Entities") that nominally hold title to dozens of the Yasgur-Gershenov Buildings on behalf of members of the Yasgur and Gershenov extended families. Upon information and belief, in other instances, individual family members are, themselves, managing members of the Title-Holding Entities.

6.      Upon information and belief, the Yasgur-Gershenov Enterprise is now owned, operated and controlled by members of the Yasgur-Gershenov extended families, who are frequently listed in government records as officers of entities nominally holding title to the Yasgur-Gershenov Buildings and/or entities registered as managers of Yasgur-Gershenov Buildings.

7.    During the entire period of Plaintiff's approximately nineteen (19) years of employment with Defendants (to wit, from in or about 2005 through in or about the first week of October 2023, when Defendants sold the building where Plaintiff was employed), Defendants functioned as a single, integrated enterprise that jointly employed maintenance workers at apartment buildings, largely located in Washington Heights and the Bronx.

8.    The Yasgur-Gershenov Buildings have been centrally managed from Defendants' management office at 825 East 233rd Street in Bronx County (the "Management Office") since 1931.

9.    For years, Plaintiff picked up his paychecks and work-related documents from the Management Office, and the Management Office's address was printed on Plaintiff's paystubs. Further, entities and individuals comprising the Yasgur-Gershenov Enterprise (including the Title-Holding Entities, managing agents, and management companies) designate the Management Office as their principal place of business.

10.    Throughout Plaintiff's employment, Plaintiff and similarly situated superintendents received flat weekly salaries, regardless of the number of hours they worked. The weekly salaries paid by Defendants failed to compensate Plaintiff and similarly situated superintendents with the appropriate overtime premiums for hours worked beyond 40 per workweek, even though Plaintiff and other superintendents worked substantially more than forty hours per week, and were required to be on-call.

11.    Defendants failed to furnish Plaintiff and similarly situated superintendents with methods to report their hours, which, in any event, would have been a futile exercise because Defendants had a practice and procedure of not paying overtime wages.

12.    The maintenance workers employed at the Yasgur-Gershenov Buildings are largely immigrant workers who speak limited English, and they are unlikely to be familiar with the American legal system, let alone their rights under wage and hour laws.

13.    Furthermore, these low-wage workers undoubtedly grasp that they are replaceable. If they are residential superintendents, the prospect of losing their jobs virtually guarantees that they and their families will simultaneously lose their superintendent's apartments where they reside.

14.    Even worse, after years of earning wages that fall below New York's minimum wage rates, the superintendents and their families are likely to experience enormous challenges finding new places to live.   These workers, who are the most marginalized and vulnerable of employees, provided manual labor at unlawfully low wages.

15.    Moreover, Defendants' superintendents are likely to understand that they are disadvantaged by the wide gulf in leverage and resources that separates them from the Yasgur-Gershenov Enterprise.

16.    The potential for Defendants to wreak retaliation upon superintendents who voice concerns about Defendants' violations of wage and hour laws is reflected by the allegations in the complaint of the plaintiff in a prior wage and hour lawsuit against Defendants, entitled Yajani Batista v. C.P. Realty, L.L.C., RGN Realty Services, April Realty Services Inc., Joseph Yasgur, and Philip Roth, Case No. 18-cv-01838-PGG (SDNY) (the "Batista Lawsuit").

17.    In the Batista Lawsuit, plaintiff, who had worked as a superintendent for Defendants since 2010, alleged that, in response to plaintiff's request that defendants pay him amounts they owed for his work, Defendants' agent "threatened Plaintiff with litigation and said 'he wouldn't get a dollar,' or words to that effect."  Batista Lawsuit, Complaint [Dkt. No. 1] ¶ 39.

18.    The plaintiff in the Batista Lawsuit further alleged that Defendants followed up on their request, telling plaintiff they no longer wanted plaintiff to work for them, serving

him with a notice to quit his apartment, and filing an eviction lawsuit against him.   Batista

Lawsuit, Complaint [Dkt. No. 1] ¶¶40, 41, 42.

19.    Therefore, this proceeding, which is brought as a putative collective action

under the FLSA's collective action provision of 29 U.S.C. § 216(b), and as a putative class

action pursuant to Federal Rule of Civil Procedure 23 to remedy violations of the NYLL and

the supporting New York State Department of Labor Regulations, is probably the only

practical opportunity for Defendants' superintendents to obtain compensation for wages they

are owed.

## JURISDICTION AND VENUE

20.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C.

§§ 1331 and 1337 because this case arises under the Fair Labor Standards Act, 29 U.S.C. §

201 *et seq.* The Court has supplemental jurisdiction over the New York state law claims

pursuant to 28 U.S.C. §1367 because these claims are so related to and closely intertwined

with the FLSA claims that they form part of the same case or controversy.

21.    Venue as to Defendants is proper in this judicial district, pursuant to 28 U.S.C.

§1391. Defendants transact business and have agents in the Southern District and are

otherwise within this Court's jurisdiction for purposes of service of process.

22.    This Court has personal jurisdiction over the Defendants, pursuant to New

York Civil Practice Law and Rules § 301, in that, *inter alia*, Defendants reside and/or

transact business within this State, employed Plaintiff within the State of New York, and

otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the

Constitution of the United States and the law of the State of New York, and accordingly may

be served with process pursuant to Rule 4(h)(1), Fed.R.Civ.P.

23.    This Court is empowered to issue a declaratory judgment pursuant to 28

U.S.C. §§ 2201-2202.

5

## THE PARTIES

**Plaintiff**

24.    Plaintiff is an adult, natural person who resides in the City of New York, County of Bronx and State of New York.

25.    Plaintiff consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and his written consent form is attached hereto as Exhibit A, which is incorporated herein by reference.

26.    Plaintiff was employed by Defendants as a superintendent in Bronx County, New York, from in or about 2005 through in or about the first week of October 2023.

27.    Defendants employed Plaintiff at Defendants' apartment building located at 2550-2552 University Avenue, Bronx, New York until 2013, when they sold those buildings.

28.    Beginning in 2013, Defendants employed Plaintiff as the superintendent of 4030 Bronx Boulevard, Bronx, New York ("4030 Bronx Blvd." or the "Building"), an approximately fifty-three (53) unit apartment building.

29.    But Plaintiff's duties and work extended far beyond being a superintendent, and involved performing tasks relating to Defendants' buildings throughout the Bronx.

30.    Plaintiff ceased working for Defendants when Defendants sold the Building in or about early October 2023.

31.    Plaintiff is a covered employee within the meaning of the FLSA and NYLL, and all of the Defendants, together with their affiliated Title-Holding Entities and management companies, have the status of joint employers of Plaintiff and similarly-situated workers at the Yasgur-Gershenov Buildings.

**Defendants**

32.    Defendants, together with non-party members of the Yasgur-Gershenov extended families who derive vast financial benefits from the Yasgur-Gershenov Buildings,

function as an enterprise having an ascertainable structure, which, upon information and belief, is comprised of: (a) defendants Brandon Yasgur, Joseph Yasgur and Joseph Gershenov (together, the "Individual Defendants"), who, upon information and belief, are the primary decision-makers and manage and sign documents on behalf of the enterprise's title-holding and management entities; (b) title-holding and management entities; and (c) other members of the Yasgur-Gershenov extended families, who support the structure as beneficiaries of trusts, performing work relating to the Yasgur-Gershenov Buildings, and sharing in the profits of the Yasgur-Gershenov Enterprise.

**Corporate/Entity Defendants:**

*General Holding LLC*

33.     Upon information and belief, and at all times herein relevant, General Holding LLC ("General Holding") is a New York limited liability company with a principal executive office at 825 East 233rd Street, Bronx, New York.

34.     Together with the other Defendants, General Holding controlled, managed and operated the Yasgur-Gershenov Buildings during periods of time relevant to Plaintiff's claims.

35.     For extended periods, General Holding issued payments to Plaintiff for work he performed on behalf of Defendants.

36.     Upon information and belief, General Holding functioned interchangeably with other entities that the Yasgur-Gershenov Enterprise would form, utilize and often abandon. Upon information and belief, like these other entities, General Holding was completely dominated and controlled by the individual defendants and other Yasgur-Gershenov family members who, at various times, were involved in running the business.

*Woodstock Management Corp.*

37.    Upon information and belief, and at all times herein relevant, Woodstock Management Corp. ("Woodstock Mgmt.") is a New York corporation with a principal executive office at 825 East 233rd Street, Bronx, New York.

38.    Upon information and belief, Woodstock Mgmt. is one of several intertwined and interchangeable management entities established and controlled by Defendants to serve as management companies for all or parts of their portfolio.

39.    From 2017 through 2020, Plaintiff's paychecks were issued by Woodstock Mgmt., which was also listed as his employer on his paystubs.

40.    Upon information and belief, Woodstock Mgmt. functioned interchangeably with other entities that the Yasgur-Gershenov Enterprise would form, utilize and, in many instances, ultimately abandon.   Upon information and belief, like these other entities, Woodstock Mgmt. was dominated and controlled by the individual defendants and other Yasgur-Gershenov family members.

*Yasgur Realty Corp. a/k/a YRC Management*

41.    Upon information and belief, and at all times herein relevant, Yasgur Realty Corp. ("Yasgur Realty") is a New York corporation with a principal executive office at 825 East 233rd Street, Bronx, New York.

42.    Together with the other Defendants, Yasgur Realty controlled, managed and operated the Yasgur-Gershenov Buildings during periods of time relevant to Plaintiff's claims.

43.    Upon information and belief, Yasgur Realty is one of several intertwined and interchangeable management entities established and controlled by Defendants to serve as management companies for all or parts of their portfolio.

*Realty Group*

44.    Upon information and belief, and at all times herein relevant, Realty Group is partnership, joint venture and/or enterprise conducting business at 825 East 233rd Street, Bronx, New York.

45.    Upon information and belief, Realty Group is a partnership and/or the name given by Defendants and members of the Yasgur-Gershenov extended families to describe their joint venture for the operation and management of the Yasgur-Gershenov Buildings.

46.    Upon information and belief, for decades, Defendants have cryptically used the name "Realty Group" to describe their real estate enterprise, without expressly stating the what type of entity Realty Group is.

47.    Together with the other Defendants, Realty Group controlled, managed and operated the Yasgur-Gershenov Buildings during periods of time relevant to Plaintiff's claims.

48.    Members of the Yasgur and Gershenov extended families controlled and operated Realty Group.  Solely by way of example, upon information and belief, family member Sidney Gershenov served as Realty Group's Operating Manager and Property Manager for 15 years.

49.    Upon information and belief, each of the individual defendants, and their family members, are involved in managing Realty Group, and they have direct and/or indirect ownership interests in Realty Group.

*4030 Bronx Blvd. Associates, L.L.C.*

50.    Upon information and belief, and at all times herein relevant, 4030 Bronx Blvd. Associates, L.L.C. ("4030BBA") is a New York limited liability company with a principal executive office at 825 East 233rd Street, Bronx, New York.

51.    4030BBA was formed, owned and controlled by Defendants for the purpose of nominally holding title to the Building where Plaintiff worked as superintendent.

52.    Upon information and belief, 4030BBA's operations, management, assets, personnel policies, wage policies and procedures, and ownership are intertwined with the other Defendants, and also with the single-purpose Title-Holding Entities and/or trusts formed by Defendants to nominally hold title to the Yasgur-Gershenov Buildings.

53.    Upon information and belief, based on a review of records filed with the New York City Department of Finance in 2017, 4030BBA's General Manager and Member was Joseph Gershenov.

54.    Based on a review of mortgages, deeds, and other documents relating to the Building, Plaintiff is informed and believes that a trust for the benefit of a Yasgur family member, of which individual defendant Joseph Yasgur is trustee, ultimately became 4030BBA's General Manager.

*Universal Management Agency LLC*

55.    Upon information and belief, and at all times herein relevant, Universal Management Agency LLC ("Universal Mgmt.") is a New York limited liability company with a principal executive office at 825 East 233rd Street, Bronx, New York.

56.    Upon information and belief, Universal Mgmt. is one of several intertwined and interchangeable management entities established and controlled by Defendants to serve as management companies for all or parts of their portfolio.

57.    Upon information and belief, the individual defendants formed Universal Mgmt. in or about 2009.

58.    At various times, Defendants paid Plaintiff with checks from Universal Mgmt.

*Ann-Gur Realty Corporation*

59.    Upon information and belief, and at all times herein relevant Ann-Gur Realty Corporation ("Ann-Gur Realty") is a New York corporation with a principal executive office at 825 East 233rd Street, Bronx, New York.

60.    Upon information and belief, Ann-Gur Realty was formed on November 2, 1931, by the founder(s) of the Yasgur-Gershenov Enterprise.

61.    Upon information and belief, Ann-Gur Realty is one of dozens of intertwined and related Title-Holding Entities and management companies formed and controlled by the Yasgur-Gershenov Enterprise to hold title to and manage various Yasgur-Gershenov Buildings.

62.    Solely by way of example, upon information and belief, Ann-Gur Realty holds title to, among other buildings, 1180 Gerard Avenue, Bronx, NY (which it acquired in 1970); 336 East 167th Street, Bronx; and 1774 Eastburn Avenue, Bronx.

63.    Solely by way of further example, upon information and belief, Ann-Gur Realty was the designated managing agent of 336 East 167th Street, New York, NY and 1180 Gerard Avenue, Bronx, NY.

64.    Based on a review of the New York Department of State's entity information database, Plaintiff is informed and believes that individual defendant Joseph Yasgur is the Chief Executive Officer of Ann-Gur Realty.

**Individual Defendants:**

65.    Upon information and belief, each of the Individual Defendants is a member of the Yasgur-Gershenov extended families.

*Brandon Yasgur*

66.    Upon information and belief, Brandon Yasgur is a resident of the State of New York.

11

67.    Upon information and belief, Brandon Yasgur has a principal place of business at 825 East 233rd Street, Bronx, New York 10466.

68.    Upon information and belief, Brandon Yasgur is a resident of the Town of Armonk, County of Westchester, and State of New York.

69.    Upon information and belief, Brandon Yasgur is the Vice President and/or Principal of Yasgur Realty.

70.    Upon information and belief, Brandon Yasgur is the Chairman and/or Chief Executive Officer of Woodstock Mgmt.

71.    Upon information and belief, Brandon Yasgur is the Vice President of Ann-Gur Realty.

72.    Upon information and belief, although Defendants own and manage the Yasgur-Gershenov Buildings through myriad entities, trusts, and trade names, the enterprise is jointly controlled by Brandon Yasgur, who is, ultimately, jointly responsible for all decisions relating to the operation of the Yasgur-Gershenov Buildings, including the amount of wages Plaintiff and similarly situated superintendents were paid.

73.    Upon information and belief, Brandon Yasgur directly supervises superintendents.

*Joseph Yasgur*

74.    Upon information and belief, Joseph Yasgur is a resident of the State of New York.

75.    Upon information and belief, Joseph Yasgur has a principal place of business at 825 East 233rd Street, Bronx, New York 10466.

76.    Upon information and belief, Joseph Yasgur was the principal or most senior officer of 4030BBA and/or the General Manager of a trust that owned and controlled 4030BBA for the benefit of the Individual Defendants.

77.     Upon information and belief, Joseph Yasgur signed and acknowledged the deed for the sale of 4030 Bronx Blvd. on October 5, 2023.

78.     Upon information and belief, when Defendants sold 4030 Bronx Blvd. on or about October 5, 2023, news reports described the seller as "Joey Yasgur."

79.     Upon information and belief, although Defendants own and manage the Yasgur-Gershenov Buildings through myriad entities and trade names, the enterprise is controlled by Joseph Yasgur, who is ultimately responsible for all decisions relating to the operation of the Yasgur-Gershenov Buildings, including the amount of wages Plaintiff and similarly situated superintendents were paid.

*Joseph Gershenov*

80.     Upon information and belief, Joseph Gershenov is a resident of the State of New York.

81.     Upon information and belief, Joseph Gershenov resides in the Town of Armonk, County of Westchester, and State of New York.

82.     Upon information and belief, Joseph Gershenov has a principal place of business at 825 East 233rd Street, Bronx, New York 10466.

83.     Upon information and belief, although Defendants own and manage the Yasgur-Gershenov Buildings through myriad entities and trade names, the enterprise is jointly controlled by Joseph Gershenov, who is, together with other members of the Yasgur-Gershenov extended families, jointly responsible for all decisions relating to the operation of the Yasgur-Gershenov Buildings, including the amount of wages Plaintiff and similarly situated superintendents were paid.

**The Yasgur-Gershenov Enterprise:**

84.     At all relevant times, Defendants were and still are parties in the Yasgur-Gershenov Enterprise, a family-operated residential real estate enterprise that owns, controls,

13

and manages apartment buildings in Upper Manhattan and the Bronx, particularly in low-income neighborhoods.

85.    Upon information and belief, Defendants have employed fifty (50) or more superintendents during the applicable FLSA and NYLL limitations periods.

86.    At all times relevant to Plaintiff's and the putative Class and Collective Members' claims, Defendants managed the Yasgur-Gershenov Enterprise and the Yasgur-Gershenov Buildings from their management office located at 825 East 233rd Street, Bronx, New York 10466.

87.    Upon information and belief, the Yasgur-Gershenov Enterprise also utilizes the office of Yasgur-Gershenov family member Michael Laub, located at 109 Montgomery Avenue, Scarsdale, New York 10583, as a location where the Yasgur-Gershenov Enterprise also conducts business.

88.    At all times relevant to Plaintiff's and the putative Class and Collective Members' claims, Defendants conducted the affairs of the Yasgur-Gershenov Buildings through common telephone numbers, to wit: (718) 664-6600 and (718) 664-6646.

89.    Upon information and belief, during the time period relevant to Plaintiff's and the putative Class and Collective Members' causes of action (indeed, for decades), the Yasgur-Gershenov Enterprise was ultimately jointly controlled by Joseph Yasgur and Joseph Gershenov, and more recently, by Brandon Yasgur, with the involvement of other members of the Yasgur-Gershenov extended families. The Individual Defendants all have the status of joint employers.

90.    In an article published on November 22, 1992, the New York Times described Joseph Yasgur and Joseph Gershenov as cousins who were "experienced owner-managers" and principals of Realty Group.

14

https://www.nytimes.com/1992/11/22/realestate/perspectives-housing-finance-freddie-mac-plants-its-flag-in-new-york.html (accessed on December 1, 2023). The foregoing New York Times article described their enterprise as encompassing seventy (70) buildings. *Id.*

91.     The Individual Defendants exercised their ownership and control of the Yasgur-Gershenov Buildings through managing and Title-Holding Entities, all under Defendants' control.

92.     The entities comprising the Yasgur-Gershenov Enterprise, all of which are owned by Defendants, include: (a) interchangeable management companies, which Defendants generally use as their trade name(s), and (b) single-asset limited liability companies, each of which nominally held title to one or more of the Yasgur-Gershenov Buildings on Defendants' behalf.

93.     Brandon Yasgur was, and he continues to be, the principal, managing member, manager and/or senior officer of several dozen of the management companies and Title-Holding Entities comprising the Yasgur-Gershenov Enterprise.

94.     Upon information and belief, based on public records, including court records and Defendants' filings with the New York City Department of Housing Preservation and Development ("HPD"), Brandon Yasgur was the designated managing agent and/or an officer of multiple Title-Holding Entities, including, *inter alia*: (a) Bronx County: 3215 Bainbridge Avenue; 95 West 183rd Street; 1858 Haight Avenue; 844 East 155th Street; 4350 Furman Avenue; 2307 Beaumont Avenue; 3306 Bailey Avenue; and 4350 Furman Avenue; and (b) New York County: 2243 Second Avenue; 2149 Second Avenue; 454 West 49th Street; and 61 Hamilton Place.

95.     Upon information and belief, based on court and HPD records, Brandon Yasgur exercises day-to-day oversight and management of Yasgur-Gershenov Buildings.

96.    Upon information and belief, based on records of New York City agencies, individual defendant Joseph Yasgur was, at relevant times, the principal, managing member and/or most senior member of Defendants' Title-Holding Entities, management companies, and/or related entities, including, *inter alia*,   limited liability companies managing and/or having title, on behalf of Defendants, to: 1235 Stratford Avenue, Bronx, New York; 4030 Bronx Blvd., Bronx, New York; 3288 Perry Avenue, Bronx, New York; 3296 Perry Avenue, Bronx, New York; 1672 Davidson Avenue, Bronx, New York; 2732 Bainbridge Avenue, Bronx, New York; 1180 Gerard Avenue, Bronx, New York; 3450 Gates Place, Bronx, New York; 3475 Knox Place, Bronx, New York; 769 Arnow Avenue, Bronx, New York; 4054 Carpenter Avenue, Bronx, New York; 1366 White Plains Road, Bronx, New York; 711 East 230th Street, Bronx, New York; 35 Mace Avenue, Bronx, New York; 201 East Mt. Eden Avenue, Bronx, New York; 2780 Grand Concourse, Bronx, New York; and 3824 Bronx Blvd., Bronx, New York.

97.    Upon information and belief, documents filed by the Yasgur-Gershenov Enterprise with HPD and the New York City Department of Finance identify other Yasgur and Gershenov family members as principals and/or managing agents of various Yasgur-Gershenov Buildings.

98.    Yasgur and Gershenov family members who are listed as managing agents and/or officers of Title-holding Entities of Yasgur-Gershenov include, without limitation, Lena Gershenov, who is identified by HPD records  as the most senior officer of: 1366 White Plains Road Associates, L.L.C, the entity that nominally holds title to 1366 White Plains Road, Bronx, New York; Ann-Gur Realty, the entity that nominally holds title to multiple Yasgur-Gershenov Buildings, including, *inter alia*, 1180 Gerard Avenue, Bronx, New York; and 2230 Tiebout Avenue, Bronx, New York; among others.

99.    Upon information and belief, defendant Joseph Gershenov was, at relevant times, the principal, co-owner, managing member and/or most senior member of Defendants' Title-holding Entities, including, *inter alia*, Defendants' limited liability companies holding title to 336 East 167th Street; 1235 Stratford Ave., Bronx, New York; and 1672 Davidson Avenue, Bronx, New York.

100.    Over the course of nearly a century, the Yasgur-Gershenov Enterprise has adopted and then abandoned various trade names and management entities, including, among others, General Holding, Yasgur Management, Universal Management, April Realty Services, G&L Realty, Management Group, and more. However, upon information and belief, there has been one constant: the Yasgur-Gershenov Enterprise is owned and controlled by the extended Yasgur and Gershenov families; for at least the past three decades, the business operations have been operated from 825 East 233rd Street in the Bronx; and members of the Yasgur-Gershenov extended families have acquired fortunes by collecting rents from the poorest and most marginal residents of New York City, while paying building workers unlawfully low wages.

101.    Upon information and belief, from the Management Office in the Bronx, Defendants determine the wages of all superintendents; handle bookkeeping for all of the Yasgur-Gershenov Buildings; accept and issue communications with tenants and building employees; and generally exercise centralized control over the Yasgur-Gershenov Buildings.

102.    Upon information and belief, the Yasgur-Gershenov Enterprise has applied common employment practices, policies and procedures to superintendents and other apartment building workers of the Yasgur-Gershenov Buildings, including*, inter alia*, their practice of willfully refusing to compensate these employees for all hours worked beyond the first forty (40) hours of work per work week and imposing policies and practices that led to unlawful deductions from superintendents' wages.

103.    Upon information and belief, the entities designated by Defendants to exercise management of the Yasgur-Gershenov Buildings, and nominally hold title to the Yasgur-Gershenov Buildings, have intertwined operations, management, assets, personnel policies, wage policies, and ownership.

104.    Upon information and belief, based on public records of New York City agencies, multiple entities that Defendants identify as holding title to Yasgur-Gershenov Buildings are trusts established for the benefit of various members of the Yasgur-Gershenov extended families, and this is one of the ways that these family members' massive fortunes are derived, in part, at the expense of building workers whose wages are unlawfully substandard.

105.    Upon information and belief, each Defendant possessed substantial control over Plaintiff's and other similarly situated employees' working conditions, and over the policies and practices with respect to wages, duties, and work schedules.

106.    Upon information and belief, Individual Defendants exercise sufficient control of the Yasgur-Gershenov Enterprise and its wage practices to be considered Plaintiff's putative collective and class members' employers under the FLSA and NYLL.

107.    For example, upon settling the Batista Lawsuit, Defendants entered into an employment agreement with the plaintiff therein that expressly provided that plaintiff would report to defendant Joseph Yasgur, among others.  Batista Lawsuit, Employment Agreement [Dkt. No. 36-1] ¶ 1.

108.    Notably, the employment agreement in the Batista Lawsuit was signed by Joseph Yasgur. Batista Lawsuit, Employment Agreement [Dkt. No. 36-1].

109.    Upon information and belief, the foregoing exemplifies defendant Joseph Yasgur's hands-on and direct involvement in supervising and controlling the terms and conditions of superintendents' employment.

110.    Additionally, upon information and belief, the Individual Defendants are liable for the wages of Plaintiff and those similarly situated under New York Business Corporation Law § 630 and New York Limited Liability Company Law § 609(c).

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

### The Proposed FLSA Collective.

111.    Plaintiff is informed and believes that Defendants' practice of refusing to pay superintendents for hours worked above the first forty hours per week, and of requiring superintendents to work extensive overtime hours, was a common practice and policy applied to workers at the Yasgur-Gershenov Buildings.

112.    Upon information and belief, superintendents at the Yasgur-Gershenov Buildings were paid the same and/or similar flat weekly wages as Plaintiff, regardless of the number of overtime hours they worked, except for major, non-janitorial projects.

113.    Pursuant to 29 U.S.C. 207 & 216(b), Plaintiff brings his FLSA overtime claim, the First Cause of Action, on behalf of himself and the FLSA Collective, which consists of:

> All persons who work or have worked as superintendents or in a substantially similar capacity as superintendents at the Yasgur-Gershenov Buildings commencing three years prior to the commencement of this action to the date of final judgment in this matter (the "Collective Action Members").

114.    A collective action is appropriate in this circumstance because Plaintiff and the Collective Action Members are similarly situated, in that they were not exempt from the FLSA's overtime provisions, and they were subjected to Defendants' practice of not paying legally-required overtime premium payments for all hours worked in excess of forty (40) hours per week.

115.    Plaintiff and the estimated, approximately 50-plus Collective Action Members have substantially similar job duties (to wit, performing building maintenance work at

apartment buildings in Upper Manhattan and the Bronx) and are paid pursuant to similar, if not the same, payment structure.

116.    At all relevant times, Defendants, whose enterprise was previously accused of FLSA wage and hour violations in a federal court proceeding, are aware and have been aware of their obligations under the FLSA, including requirements to pay Plaintiff and the Collective Action Members at amounts equal to one and one-half times their regular rates of pay for all hours worked each workweek above forty hours and/or had ready access to information about wage and hour requirements, yet they purposely and willfully chose not to do so.

117.    Plaintiff and all similarly situated employees who elect to participate in this action seek unpaid compensation, unpaid overtime, an equal amount of liquidated damages, prejudgment interest, attorneys' fees, and costs pursuant to 29 U.S.C. § 216(b).

118.    The Collective Action Members are readily ascertainable, such information being in the possession and control of Defendants.

119.    Plaintiff's consent to sue under the FLSA is annexed hereto as Exhibit A.

**The Proposed R. 23 Class.**

120.    Plaintiff brings the Second through Sixth Causes of Action (the "NYLL Claims"), under Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and a class of persons (the "NYLL Class") consisting of:

> All persons who work or have worked for Defendants as superintendents, or in a substantially similar capacity to superintendents, at the Yasgur-Gershenov Buildings commencing six years and two hundred twenty-eight days prior to the commencement of this action to the date of final judgment in this matter.

121.    The members of the NYLL Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

122.    Upon information and belief, there are more than fifty members of the NYLL Class.

123.    NYLL Class Members are readily ascertainable.  The number, identity and addresses of putative class members are ascertainable from Defendants' records.  The positions held, and nature and extent of certain unlawful deductions from wages are also determinable from Defendants' records.  Notice can be provided by means permissible under Fed. R. Civ. P. 23.

124.    The Defendants, their officers, and directors are excluded from the NYLL Class, as well as all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

125.    Plaintiff's claims are typical of those claims that could be alleged by any member of the NYLL Class, and the relief sought is typical of the relief which would be sought by each member of the NYLL Class.

126.    Plaintiff and the NYLL Class have been subjected to common wage and hour violations in that they were deprived of overtime pay and minimum wages, subjected to unlawful deductions from wages due to Defendants' common policies, practices, and patterns of conduct, and were not issued accurate wage statements.

127.    Defendants' corporate-wide policies and practices affected members of the NYLL Class similarly, and Defendants profited from the same type of unfair and/or wrongful acts as to each member of the NYLL Class.

128.    Plaintiff is able to fairly and adequately protect the interests of the NYLL Class and has no interests antagonistic to the NYLL Class.

129.    Plaintiff is represented by attorneys who are experienced and competent in both class and collective action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases, particularly in cases that, as here, involve

claims of superintendents and building maintenance workers employed in residential buildings in New York.

130.    A class action is superior to other available methods of fair adjudication of NYLL Claims, particularly because many of the putative members of the NYLL Class are not fluent in English, are unlikely to be familiar with their rights under the NYLL, may be fearful of suffering retaliation if they commence a lawsuit, and may not have the financial resources to vigorously pursue a lawsuit.

131.    Common questions of law and fact exist as to the NYLL Class that predominate over any questions only affecting Plaintiff and/or each member of the NYLL Class individually and include, but are not limited to, the following:

(a)    Whether Defendants paid the NYLL Class minimum wages to which members of the NYLL Class were entitled under the NYLL;

(b)    Whether Defendants unlawfully paid the NYLL Class bi-weekly, rather than weekly, in violation of NYLL § 191, which requires employers to pay manual workers weekly;

(c)    Whether Defendants paid the NYLL Class premium overtime compensation for all hours worked above forty in a workweek;

(d)    Whether Defendants required the NYLL Class to pay for their tools used for the benefit of the Defendants, in violation of Section 141-1.9 of the Rules promulgated by the New York State Department of Labor for the building service industry. 12 N.Y.C.R.R. § 141-1.9;

(e)    Whether Defendants required the NYLL Class to pay for temporary replacement workers when they took time off for vacations; and

(f)    Whether Defendants furnished Plaintiff and the NYLL Class with accurate wage notices and wage statements as required by the NYLL, and whether these omissions were intended and/or had the effect of obfuscating the basis and methods for determining and paying wages.

## COMMON FACTUAL ALLEGATIONS

### Interstate Commerce

132.    At all relevant times hereto, Defendants have been employers engaged in commerce, as defined under 29 U.S.C. § 203(b) and (d).  Defendants employed Plaintiff as a

superintendent. This employment position engaged Plaintiff in commerce, as defined under 29 U.S.C. §§ 203(b), (e), (g) and 29 U.S.C. § 207(a)(1).

133.    At all times relevant hereto, Defendants have been an "enterprise engaged in commerce or in the production of goods for commerce," as defined under 29 U.S.C. § 203(s)(1).

134.    Among other forms of interstate activities, Defendants operate the Yasgur-Gershenov Buildings through the extensive use and handling of goods and materials, such as cleaning supplies, paint, tools, and similar items, all of which travelled in interstate commerce, and Plaintiff personally used such materials in performing his daily job duties.

135.    In performing his routine job duties, Plaintiff handled and installed faucets, carbon monoxide detectors, window guards, and other items that, upon information and belief, had been moved in interstate commerce.

136.    Upon information and belief, Defendants operated the Yasgur-Gershenov Buildings with extensive business dealings with mortgage companies, banks, insurance companies, vendors, and other service providers both within and outside the State of New York.

137.    At all relevant times, Defendants employed Plaintiff within the meaning of the FLSA and all other statutes referred to in this Complaint.

138.    At all relevant times, Defendants employed Plaintiff within the meaning of the NYLL, §§ 2 and 651(5) and (6).

**Enterprise**

139.    Upon information and belief, at all relevant times, Defendants had gross revenues in excess of $500,000.00.

140.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay building employees by the same method, and share control over employees.

141.    Throughout Plaintiff's employment, the Yasgur-Gershenov Enterprise would conduct its real estate enterprise by using interchangeable and varying trade names and entities, such as "April Realty Services Inc.," "Realty Group," "General Holding LLC," "Woodstock Management Corp.," "Realty Group North," and dozens of limited liability companies that nominally holding title to individual apartment buildings.

142.    During Plaintiff's employment, Plaintiff's direct supervisor required Plaintiff to drive him to Defendants' Buildings throughout the Bronx.

143.    Prior to the onset of the COVID-19 health crisis, Defendants provided Plaintiff with paychecks to distribute to Defendants' other superintendents, and Plaintiff was required to distribute paychecks to superintendents at their respective buildings.

144.    Upon information and belief, all of the Defendants' constituent entities are under common management.

145.    Defendants jointly employed Plaintiff and are Plaintiff's employer within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

146.    In the alternative, Defendants constitute a single employer of Plaintiff and similarly situated superintendents.

**Summary of Defendants' Unlawful Wage Practices**

147.    Upon information and belief, Defendants applied common employment practices, policies and procedures to superintendents working at the Yasgur-Gershenov Buildings, including*, inter alia*, willfully refusing to pay one and one-half their regular rates of pay for all hours worked beyond the first forty (40) hours of work per week, paying fixed

weekly wages that fell below New York's applicable minimum wage rates, and unlawfully deducting sums from wages.

148.    Defendants provided Plaintiff and similarly situated building workers with no methods to report the hours they worked.

149.    Defendants require superintendents to remain on-call at their respective buildings from early morning through late at night, without making any arrangements for superintendents to report and/or be paid wages for their on-call time.

150.    Defendants' insistence that superintendents remain on-call ensured the superintendents' availability to perform snow removal, provide building access to emergency responders, address leaks, handle tenant requests, and perform other unanticipated tasks. However, regardless of the time of day or night and/or day of the week when such work was performed, superintendents were, with limited exceptions, paid fixed weekly sums, and they were not paid premium overtime compensation despite working substantially more than 40 hours per workweek in violation of the FLSA and NYLL.

151.    Furthermore, Defendants had a policy and practice of requiring Plaintiff and similarly-situated building maintenance workers to pay for tools used solely for the benefit of Defendants, in violation of Section 141-1.9 of the Rules promulgated by the New York State Department of Labor for the building service industry.  12 N.Y.C.R.R. § 141-1.9.

152.    Defendants also had a common practice of issuing pay statements to workers that did not comply with the NYLL, including, among other unlawful omissions, failing to accurately set forth hours worked, failing to accurately identify the manner in which employees' pay was calculated, and failing to set forth the names and addresses of joint employers.

153.    Upon information and belief, beginning in or about 2020, Defendants did not issue any pay statements and/or Defendants did not provide workers with information about how to electronically access wage statements.

**Factual Allegations Relating to Plaintiff's Wage Claims**

154.    Plaintiff worked for Defendants as a superintendent commencing in or about 2005.

155.    For approximately the first eight (8) years of Plaintiff's employment, he was the superintendent of 2250 University Avenue in Bronx County, New York.

156.    Thereafter, commencing in or about 2013, Plaintiff was transferred to 4030 Bronx Blvd., where he continuously worked for Defendants as superintendent (and also performed extensive non-superintendent work) until Defendants sold 4030 Bronx Blvd. on or about October 5, 2023.

157.    Plaintiff's routine responsibilities included, among other tasks, cleaning, mopping, minor repairs, light plumbing, communicating with tenants, sweeping the sidewalk, handling recycling and garbage, cleaning the elevator hold, showing vacant apartments to prospective tenants, removing discarded items from newly-vacated apartments, repairing sinks and toilets, allowing access for emergency responders at all hours of the night and day, and addressing leaks twenty-four hours a day.

158.    Except for projects involving non-superintendent work, Plaintiff was paid a fixed weekly salary, regardless of the number of hours he worked, as follows: (a) until approximately 2020, $530.00 per week; and (b) from approximately 2020 through Defendants' sale of the Building on or about October 5, 2023, it is believed that Plaintiff's gross wages were increased by approximately $30.00 per week (i.e., to $560.00 per week).

159.    However, because of the lack of accurate wage statements, Plaintiff is uncertain about his gross wages for certain periods beginning in 2020, such information being in the possession of Defendants.

160.    Plaintiff's regular weekly schedule, excluding on-call time, major repair/renovation projects, and emergencies, was as follows:

> (a) Weekdays: approximately 7:00 a.m. to approximately 5:30 p.m.;
>
> (b) Saturdays and Sundays: cleaning for three to four hours each day, typically in both the morning (for cleaning and garbage) and then in the evening (for garbage/recycling).

161.    Based on the foregoing, it is conservatively estimated that Plaintiff's regular weekly schedule entailed sixty and one-half (60.5) hours of work. However, Plaintiff's wages only covered the first forty (40) hours he worked each week.

162.    In addition, Plaintiff had to handle emergent repairs and other issues at all hours of the day and night, which caused Plaintiff to work more than his regular weekly schedule of sixty and one-half (60.5) hours.

163.    Solely by way of example, the apartments in "line A" of the Building had chronic leak issues, which required immediate attention late at night, over and above Plaintiff's 60.5-hour typical schedule.

164.    Instances with unexpected issues arose including, by way of example, on or about October 20, 2019, during the overnight hours, when a tenant experienced flooding at approximately 2:30 a.m.

165.    On average, Plaintiff was required to handle emergent and/or unexpected issues after hours two to four times per month. These matters involved clogged bathtubs and sinks, boiler issues, shoveling snow, providing access to emergency responders, and countless other matters.

166.    The foregoing does not include time Plaintiff spent on-call, at Defendants specific insistence, at all hours of the day and night.

167.    Because of issues relating to conduct of tenants, Plaintiff was forced to provide access to emergency providers during overnight hours at least ten (10) times per year, and each instance would involve at least one hour of uncompensated overtime work, and often far more than this.  Defendants were aware that Plaintiff was required to provide access to and accompany police officers late at night.

168.    For extended periods during Plaintiff's employment, Plaintiff performed more than twelve hours of non-superintendent work each week, including renovations of bathrooms, kitchens, and entire apartments; painting and plastering; and intensive electrical and plumbing work.

169.    For example, in or about March and April 2021, Plaintiff performed extensive renovation work of three apartments, which entailed substantially more than twelve (12) hours of non-superintendent work per week.

*NYLL Minimum Wage Shortfalls*

170.    Plaintiff's flat weekly wages fell below the applicable New York minimum wage rates.

171.    Defendants purported to pay Plaintiff on an hourly basis, as opposed to a per-unit rate of pay, despite having failed to pay Plaintiff for all the hours he worked.

172.    Through 2020, when Plaintiff was paid wages of $530.00 per week, Plaintiff's effective regular hourly rate of pay was $13.25 ($530 ÷ 40), which was below the New York minimum wage rates provided by New York's Minimum Wage Order for Miscellaneous Industries and Occupations (12 NYCRR § 142) (the "Miscellaneous Wage Order") during that period (to wit: $15.00 beginning in 2019).

173.    Beginning in or about 2020 until Plaintiff ceased working for Defendants in or about the first week of October 2023, when Plaintiff was paid wages of $560.00 per week, Plaintiff's effective hourly rate of pay was $14.00 ($560 ÷ 40), which was below the Miscellaneous Wage Order's $15.00 hourly minimum wage rate during that period.

*FLSA and NYLL Unpaid Overtime Wages*

174.    Although Plaintiff received additional funds from Defendants to perform major repair projects (i.e., for non-superintendent work), typically involving apartment turnovers and major projects, he was not paid for any of the time he spent on-call, nor any wages for his overtime hours spent performing his superintendent duties.

175.    In addition, Plaintiff was not paid for time he spent handling emergencies, such as leaks, during overnight hours and on weekends, even though this resulted in Plaintiff working more than his regular schedule of about sixty and one-half hours per week.

176.    Defendants required Plaintiff to be on-call. Plaintiff's manager, Joel, told Plaintiff (paraphrasing) "you work for me 24 hours, 7 days a week."

*Unlawful Deductions from Wages*

177.    Defendants required Plaintiff and similarly-situated superintendents to pay for their own work tools, and pay for temporary replacement workers when they took vacations, all without reimbursement from Defendants.

178.    Plaintiff purchased a drill, circular saw, and other tools of the trade without reimbursement.

179.    Plaintiff paid a porter, who assisted him with basic duties, without reimbursement from Defendants.  The foregoing had the effect of lowering Plaintiff's wages even further below the NYLL's minimum wage rate.

29

180.    When Plaintiff took time off, he paid for someone to perform his duties, without reimbursement from Defendants.  This had the effect of reducing Plaintiff's pay even further below the applicable minimal wage rate.

181.    Defendants also unlawfully deducted fines issued by New York City agencies from Plaintiff's pay.  For example, upon information and belief, in March 2021, Defendants unlawfully deducted $50.00 from Plaintiff's pay.

*Untimely Payment of Wages in Violation of NYLL § 191*

182.    Defendants were required to pay Superintendents, who performed manual work, weekly.

183.    However, Defendants had a common practice and policy of: (a) paying Superintendents, including Plaintiff, bi-weekly; and (b) making Plaintiff and other Superintendents wait even longer (substantially more than seven days after the end of the week during which work was performed) for amounts owed for work assignments above and beyond their superintendent duties.

## AS AND FOR A FIRST CAUSE OF ACTION
### Overtime Wage Violations, 29 U.S.C. §§ 201 *et seq.*
### (Individually and on Behalf of the FLSA Collective)

184.    Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs with the same force and effect as though fully set forth herein.

185.    As described above, Plaintiff worked in excess of forty hours in a workweek.

186.    As described above, Defendants did not properly compensate Plaintiff for all hours he worked in excess of forty in a workweek, as required by the FLSA.

187.    Plaintiff is informed and believes, and thereon alleges, that Defendants have willfully required, or require, the FLSA Collective Members, as part of their employment at the Yasgur-Gershenov Buildings, to work without additional compensation, such as

overtime, in excess of the forty hours per week maximum under 29 U.S.C. § 207(a)(1). That Section provides the following:

> Except as otherwise provided in this section, no employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate which is not less than one and one-half times the regular rate at which he is employed.

188.    In the performance of their duties for Defendants, the FLSA Collective Members routinely worked more than forty (40) hours per week, yet did not receive premium overtime compensation for their overtime work. The precise number of unpaid overtime compensation will be proven at trial.

189.    Plaintiff proposes to undertake appropriate proceedings to have such FLSA Collective Members aggrieved by Defendants' unlawful conduct notified of the pendency of this action and join this action as plaintiffs, pursuant to 29 U.S.C. § 216(b), by filing written consents to joinder with the Court.

190.    Defendants' overtime violations of the FLSA were willful violations of the FLSA, within the meaning of 29 U.S.C. § 255(a).

191.    Defendants have a policy and practice of refusing to pay overtime compensation to Plaintiff and other building workers.

192.    As a result of the foregoing, Plaintiff seeks judgment against Defendants on his own behalf, and on behalf of those similarly situated FLSA Collective Members who file written consents to joinder in this action, for all unpaid overtime wages owed by Defendants to Plaintiff and the FLSA Collective Members, pursuant to 29 U.S.C. §§ 206 and 207, together with an award of an additional equal amount as liquidated damages, and costs, interest, and reasonable attorneys' fees, as provided for under 29 U.S.C. § 216(b).

**AS AND FOR A SECOND CAUSE OF ACTION**
**New York Labor Law – Minimum Wages**
**(Individually and on Behalf of the NYLL Class)**

193.   Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs, with the same force and effect, as if fully alleged herein.

194.   Defendants knowingly and willfully paid Plaintiff and similarly-situated building maintenance workers less than the applicable minimum wage in violation of NYLL § 652 and the supporting regulations of the New York State Department of Labor.

195.   In 2020, Plaintiff's effective hourly rate of pay was $14.00, and even less when Plaintiff was subject to unlawful deductions from wages.

196.   By the course of conduct set forth above, Defendants have violated N.Y. Lab. Law § 650, et seq., 12 N.Y.C.R.R. § 142-2.2 and/or 12 NYCRR § 141-1.2.

197.   As a consequence of the willful underpayment of minimum wages, alleged above, Plaintiff and members of the NYLL Class have incurred damages thereby and Defendants are indebted to them in the amount of unpaid minimum wages and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper, including but not limited to liquidated damages, interest and attorneys' fees.

**AS AND FOR A THIRD CAUSE OF ACTION**
**New York Labor Law – Overtime Wages**
**(Individually and on Behalf of the NYLL Class)**

198.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs, with the same force and effect, as if fully alleged herein.

199.   Defendants employed Plaintiff and similarly-situated maintenance workers for workweeks longer than forty (40) hours and willfully failed to compensate them for their time worked in excess of forty (40) hours per week, at a rate of not less than one and one-half (1 and ½) times the regular hourly rate, in violation of the requirements of the NYLL.

200.    By the course of conduct set forth above, Defendants have violated N.Y. Lab. Law § 650, et seq. and 12 N.Y.C.R.R. § 142-2.2.

201.    Defendants have a policy and practice of refusing to pay overtime compensation at 1.5 times employees' regular rates of pay to building workers.

202.    As a consequence, Plaintiff and members of the NYLL Class have incurred damages thereby and the Defendants are indebted to them in the amount of unpaid overtime compensation and such other legal and equitable relief from Defendants' unlawful and willful conduct as the Court deems just and proper, including but not limited to liquidated damages, interest, costs, and attorney's fees.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**Illegal Deductions, New York Labor Law, Article 19 § 193**
**12 N.Y.C.R.R. § 2.10(a)**
**(Individually and on Behalf of the NYLL Class)**

203.    Plaintiff incorporates each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

204.    In violation of the NYLL Art. 19, § 193, Defendants unlawfully deducted wages from Plaintiff and the NYLL Class by requiring Plaintiff and other building workers to: (a) spend their own money on work-related expenses, including tools of the trade to complete mandated work; (b) pay for replacement workers to fill in for them while they were on vacation and/or for assistants, all without full reimbursement for these costs; and (c) pay New York City agencies for building-related fines.

205.    The foregoing unlawful deductions further reduced Plaintiff's wages (and the wages of other building workers) below the wages required by the NYLL and FLSA.

206.    As a result of the foregoing, Plaintiff seeks judgment against Defendants on his own behalf, and on behalf of NYLL Class, for reimbursement of unlawful deductions, as well as liquidated damages, and interest, and such other legal and equitable relief from defendants' unlawful and willful conduct as the Court deems just and proper.

## AS AND FOR A FIFTH CAUSE OF ACTION
### NYLL § 191(1)(a) – Late Payment of Wages
### (On Behalf of Plaintiff and the NYLL Class)

207.    Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

208.    The provisions of NYLL § 191 requiring the timely payment of wages, and the applicable supporting regulations, applied to Plaintiff and the NYLL Class, who performed manual work for Defendants. Consequently, Defendants were required to pay Plaintiff and the NYLL Class weekly and not later than seven calendar days after the end of the week in which wages were earned.

209.    Defendants failed to pay Plaintiff and the NYLL Class on a timely basis as required by NYLL § 191(1)(a).

210.    Due to Defendants' violations of NYLL § 191(1)(a), Plaintiff and NYLL Class are entitled to recover the amounts of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 1981.

## AS AND FOR A SIXTH CAUSE OF ACTION
### NYLL Wage Theft Prevention Act – Failure to Provide Wage Statements
### Violation of NYLL § 195(3)
### (Individually and on Behalf of the NYLL Class)

211.    Plaintiff incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

212.    The NYLL and Wage Theft Prevention Act ("WTPA") require employers to provide employees with an accurate wage statement each time they are paid.

213.    Defendants willfully failed to provide Plaintiff and the NYLL Class with wage statements at the end of every pay period that correctly identified the number of overtime hours worked and other information as required by NYLL § 195(3).

214.    Due to Defendants' violations of the NYLL, Plaintiff and the NYLL Class are entitled to recover from Defendants per employee liquidated damages of $250.00 per work day that the violations occurred, or continue to occur, up to $5,000.00, together with costs, reasonable attorneys' fees, pre-judgment and post-judgment interest, and injunctive and declaratory relief, pursuant to the NYLL § 198(1-d).

215.    By failing to provide Plaintiff and the NYLL Class with wage statements identifying the actual hours they worked, Defendants hindered Plaintiff and the NYLL Class from determining and seeking payment for the precise number of unpaid hours.  This failure impaired their ability to promptly raise issues of underpayment with Defendants. Plaintiff and the NYLL Class were therefore harmed by being deprived of their income for longer than they would have been had they been able to timely raise their underpayment claim earlier.

## **RELIEF SOUGHT**

**WHEREFORE,** Plaintiff, Ramon Milanes, on behalf of himself and on behalf of members of the FLSA Collective and NYLL Class against defendants, General Holding LLC, Brandon Yasgur, Joseph Yasgur, Joseph Gershenov, Woodstock Management Corp., 4030 Bronx Blvd. Associates, L.L.C., Yasgur Realty Corp., Universal Management Agency LLC, Ann-Gur Realty Corporation, and Realty Group, respectfully requests that this Court:

1.    Designate this action as a collective action on behalf of the FLSA Class members and order the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Collective, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 28 U.S.C. § 216(b), and appointing Plaintiff and his counsel to represent the FLSA Collective Members;

2.    Designate Plaintiff as representative of the FLSA Collective;

3.    Designate Plaintiff's counsel as counsel for the FLSA Collective;

4.    Certify this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the NYLL Class with respect to all of the NYLL Claims;

5.    Appoint Plaintiff as representative of the NYLL Class;

6.    Appoint Plaintiff's counsel as Class Counsel for the NYLL Class;

7.    Toll the statutes of limitations;

8.    Declare, adjudge and decree that Defendants willfully violated the overtime wage provisions of the FLSA as to Plaintiff and the FLSA Collective;

9.    Declare, adjudge and decree that Defendants willfully violated their legal duties to pay overtime compensation as required under the NYLL as to Plaintiff and the NYLL Class;

10.    Declare, adjudge and decree that Defendants willfully violated their legal duties to pay accrued wages to Plaintiff and the NYLL Class;

11.    Declare, adjudge and decree that Defendants willfully violated their legal duties by requiring maintenance workers to pay for tools used solely for the benefit of Defendants, in violation of Section 141-1.9 of the Rules promulgated by the New York State Department of Labor;

12.    Award Plaintiff and all those similarly situated actual damages for unpaid wages and liquidated damages equal to the unpaid wages found due to Plaintiff and the proposed FLSA Collective as provided by the FLSA, 29 U.S.C. § 216(b);

13.    Award Plaintiff and all those similarly situated attorneys' fees, costs and disbursements as provided by the FLSA, 29 U.S.C. § 216(b);

14.    Award Plaintiff and the NYLL Class actual damages for unpaid wages, liquidated damages, statutory damages, penalties, attorneys' fees, costs, and interest, as provided under New York law;

36

15.    Award Plaintiff and the NYLL Class liquidated damages for Defendants' violations of NYLL § 191(1)(a);

16.    Award Plaintiff and the NYLL Class statutory damages for Defendants' failure to provide accurate wage statements pursuant to NYLL § 198(1-d);

17.    Award reasonable attorneys' fees and costs of the action; and

18.    Such other relief as this Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff, on behalf of himself and all others similarly situated, hereby demands a trial by jury on all issues so triable.

Dated:  New York, New York
        December 29 2023

Respectfully submitted,

RAPAPORT LAW FIRM, PLLC

By:    */s/ Marc A. Rapaport*
       Marc A. Rapaport
       80 Eighth Avenue, Suite 206
       New York, New York 10011
       Ph: (212) 382-1600
       mrapaport@rapaportlaw.com


       MILLER LAW, PLLC

By:    */s/ Meredith R. Miller*
       Meredith R. Miller
       167 Madison Avenue, Suite 305
       New York, New York 10016
       Ph: (347) 878-2587
       meredith@millerlaw.nyc


       *Attorneys for Plaintiff, Ramon Milanes, and the putative FLSA Collective and NYLL Class*